**IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA**

JOSE ARMONDO MELGAREZ
14304 Westmeath Drive
Laurel, Maryland 20707

     *Plaintiff,*

  v.

BORGER MANAGEMENT, INC.
1111 14th Street, N.W., Suite 200
Washington, D.C. 20005

Serve: Corporation Service Company
    1090 Vermont Avenue, N.W.
    Washington, D.C. 20005

    *Defendant*.

Case No.: 23-1788

**COMPLAINT**

Plaintiff, Jose Armondo Melgarez ("Plaintiff"), by his undersigned counsel, brings suit against Borger Management, Inc. ("BMI"), for violations of the Fair Labor Standards Act ("FLSA"), 29 U.S. C. §§ 201, *et seq*., the District of Columbia Minimum Wage Revision Act ("DCMWRA"), D.C. Code §§ 32-1001 *et. seq.*, and the District of Columbia Wage Payment and Collection Law ("DCWPCL"), D.C. Code § 32-1301, *et seq*.

Plaintiff alleges as follows:

**THE PARTIES**

1.    Plaintiff is an adult resident of Laurel Maryland. Since December 2014 to the present, he was employed by Defendant in the District of Columbia. During that time, Plaintiff spent nearly all of his working time in the District of Columbia. Plaintiff is seeking wages for unpaid hours and unpaid overtime hours from February 26, 2015, to the present and into the future, as long as the violations continue. The period for which unpaid wages are sought shall be referred

to as the "Relevant Period".

2.      BMI is a corporation organized under the laws of the District of Columbia. BMI meets the definition of an "Enterprise Engaged in Commerce" under the FLSA (29 U.S.C. § 203(s)(1)(A)(i)), as it has: (1) employees engaged in commerce or the production of goods for commerce or employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce; and (2) a gross volume of sales made or business done of not less than $500,000.00 (exclusive of excise taxes at the retail level that are separately stated). In addition, BMI was directly engaged in commerce since it operated in multiple states.

3.      BMI was also Plaintiff's employer within the meaning of the FLSA, the DCWPCL and the DCMWRA, because it hired Plaintiff, it had the authority to terminate Plaintiff, it paid Plaintiff his wages, it supervised Plaintiff, it made the decisions to pay Plaintiff in a manner made unlawful by the FLSA, the DCWPCL and the DCMWRA and it maintained Plaintiff's employment records.

## JURISDICTION

4.      The jurisdiction of this Court is based upon 28 U.S.C. § 1331 and 29 U.S.C. § 217. The Court has subject matter jurisdiction under § 1331 because Plaintiff's claims involve federal questions, and the Court has pendant jurisdiction over the Plaintiff's District of Columbia law claims under 28 U.S.C. § 1367.

## PERSONAL JURISDICTION OVER DEFENDANT

5.      This Court has *in personam* jurisdiction (general and specific jurisdiction) over Defendant under the District of Columbia Long Arm Statute, D.C. Code §§ 13-422 and 13-423 because it is based in the District of Columbia, it does business in the District of Columbia, it employed Plaintiff in the District of Columbia and the violations of the FLSA, the DCWPCL and

the DCMWRA all took place in the District of Columbia.

## TIMELY ASSERTION OF CLAIMS UNDER THE DCMWRA

6.      The applicable statute of limitations under the DCWPCL and the DCMWRA (which became effective on February 26, 2015), provides that an action, "must be commenced within 3 years after the cause of action accrued, *or the last occurrence if the violation is continuous* …" D.C. Code § 32-1308 (c)(1) (Emphasis supplied). On a continuing and ongoing basis from the beginning of Plaintiff's employment with Defendant to the present, it failed to pay Plaintiff anything at all for some of his overtime hours, including an overtime premium for those hours. Because the violations of the DCMWRA and the DCWPCL are continuous, the statute of limitations under the DCMWRA and the DCWPCL will not run until three years from the last violation.

7.      Plaintiff has also asserted timely wage claims under the DCMWRA for violations occurring from February 26, 2015 to the present, for another reason: the statute of limitations for his claims under the DCMWRA was tolled effective February 26, 2015, and each day thereafter, when, on a continuing basis, Defendant failed to comply with the provisions of D.C. Code § 32-1008 (b) and (d) (which became effective on February 26, 2015). Section 32-1008 (b) required Defendant to provide Plaintiff with an accurate itemized statement (in his paystub) of the hours he worked during each pay period. *See* D.C. Code § 32-1008 (b)(5). Throughout Plaintiff's employment with Defendant, Defendant failed to provide Plaintiff with an itemized statement which accurately indicated the hours he worked, as the pay stubs he received routinely understated his actual work hours and his actual overtime hours. As a result, the statute of limitations was tolled as of the effective date of the law (February 26, 2015). This also means that Plaintiff has timely unpaid wage claims for following time frame: February 26, 2015 to the present. *See* D.C.

Code § 32-1008 (d)(3) ("The period prescribed in § 32-1308 (c), shall not begin until the employee is provided **all itemized statements** and written notice required by this section") (emphasis supplied).

## PLAINTIFF'S EMPLOYMENT AND COMPENSATION

8.     Throughout his employment with BMI, Plaintiff was employed as a Maintenance Technician, which consisted of handling building maintenance issues that largely involved customer calls about maintenance problems in the apartment units of the Dorchester House, 2480 16th Street, N.W., Washington, D.C. 20009. Regarding this part of his job, Plaintiff typically worked eight hours per day, five days per week (Monday through Friday).

9.     In addition to his Monday through Friday regular working hours, for one week per month Defendant required Plaintiff to be on call 24-hours per day outside of his regular working hours Monday through Friday and on Saturday and Sunday. During that time frame, Defendant required Plaintiff to respond to customer calls from customers in any one of three apartment buildings: (1) the Dorchester House, (2) Dorchester West, 2425 17th Street, N.W., Washington, D.C. 20009 and (3) The Citadel Apartments, 1631 Kalorama Road, N.W., Washington, D.C. 20009. During the one-week period during which Plaintiff was on call, he would invariably be required to respond to customer complaints after regular work hours and on weekends. During these weeks the question was not "if" but when he would be called to attend to a maintenance problem.

10.     Defendant agreed that all of the compensable time that Plaintiff worked during the aforementioned on-call visits was paid at 1.5 times Plaintiff's regular rate of pay regardless of whether those extra hours took Plaintiff over the 40-hour-per-week threshold, which triggered the statutory right to overtime pay.

4

11.     When Plaintiff began working the on-call shifts, Defendant provided him with a time sheet to complete for all on-call visits within that period. The sheet contained, *inter alia*, a box for him to record his "work hours". At no time did Defendant inform Plaintiff that his travel time to and from the on-call visits was compensable work time or that he should otherwise report travel time on the time sheet. As a result, Plaintiff was misled into believing that he should not report the travel time. So, for about five years (until approximately 2020), Plaintiff did not record his travel time on the on-call visit time sheets and Plaintiff was underpaid for his on-call visits. Plaintiff began reporting his travel time as part of his on-call visit hours in or around 2020.

12.     However, from the inception of Plaintiff's employment with Defendant, Plaintiff would not receive full compensation for all his work hours or overtime hours because Defendant routinely and intentionally failed to pay Plaintiff for all of his hours of work. And despite Plaintiff's many complaints, Defendant not only failed to correct its past errors, it continued to underpay Plaintiff.

13.     Without all of his time records, on-call visit reports and payroll records (which Plaintiff does not possess at present), Plaintiff is unable to determine the exact number of hours Defendant underpaid him since February 26, 2015. However, Plaintiff has some of his on-call time records and some of his payroll records and based on those records, Plaintiff was able to provide some examples of Defendant's failure to pay him for all of his overtime hours. They are as follows: (1) in pay period 06/06/2020 to 06/19/2020, Plaintiff received pay for 80 hours of work, but performed 90 hours of work (he was underpaid for 10 hours); (2) in pay period 08/15/2020 to 08/28/2020, Plaintiff received pay for only 80 hours, but worked 74 hours and received PTO for 8 hours (he should have received pay for 82 hours, so he was underpaid for 2 hours); (3) in pay period 09/26/2020 to 10/09/2020, Plaintiff received pay for 85 hours, but worked 79 hours and

received PTO for an additional 8 hours (he should have received pay for 87 hours, so he was underpaid by 2 hours); (4) in pay period 07/03/2021 to 07/16/2021, Plaintiff received pay for 80 hours, he but actually worked 87.5 hours and received 8 additional hours of holiday pay (he should have been paid for 95.5 hours, so he was underpaid by 15.5 hours); (5) in pay period 07/30/2022 to 08/12/2022, Plaintiff received pay for 85 hours of work, but he worked 89.5 hours (he was underpaid for 4.5 hours); (6) in pay period 09/24/2022 to 10/07/2022, Plaintiff received pay for 80 hours of work but actually performed 87 hours of work (he was underpaid by 7.0 hours); and (7) in pay period 05/06/2023 to 05/19/2023, Plaintiff received pay for 85 hours of work, but actually performed 86 hours of work (he was underpaid by one hour).

14.     The above are just examples, but Plaintiff estimates that he failed to receive pay for all his hours during all or almost all of his on-call weeks. Plaintiff estimates that Defendant shortchanged him on average between 2 and 8 hours during his on-call weeks. Plaintiff will be able to arrive at a more precise figure after looking at all of his on-call reports and additional payroll records, which he expects to obtain in discovery.

15.     Plaintiff does not recall his exact regular rate of pay during each of his workweeks from February 26, 2015 to the present. Plaintiff's payroll records, which he will obtain in discovery, will indicate his historical regular rates. But, based on the records Plaintiff possesses, in 2020, his regular rate of pay was $21.95 per hour; in 2021, his regular rate was initially $21.95 per hour and then increased to $22.61 per hour; in 2022, his regular rate of pay was initially $22.61 per hour and increased to $24.20 per hour; and in 2023, his regular rate of pay was initially $24.20 per hour and increased to $25.41 per hour.

16.     Plaintiff is not able to calculate his damages until he receives all his time and payroll records.

## COUNT I
## VIOLATIONS OF THE FLSA

17.     Plaintiff re-alleges and incorporates the allegations contained in the paragraphs above.

18.     At all times relevant to the Complaint, BMI was an enterprise engaged in commerce.

19.     At all relevant times, BMI employed Plaintiff within the meaning of the FLSA.

20.     BMI violated the FLSA by failing to pay Plaintiff anything at all for all for some of his work hours and failed to pay him an overtime premium for his overtime hours.

21.     BMI's actions were not undertaken in good faith or with a reasonable belief that they were lawful and therefore, it is liable to Plaintiff for liquidated damages.

22.     BMI is liable to Plaintiff under 29 U.S.C. § 216(b) of the FLSA, for his unpaid overtime premium compensation and his unpaid wages plus an additional equal amount as liquidated damages and reasonable attorneys' fees and costs incurred in this action, including attorneys' fees at the Adjusted Laffey Matrix rates, the Legal Services Index Rate and/or the rates set forth in *Salazar ex rel. v. District of Columbia*, 809 F.3d 58 (D.C. Cir. 2015), as required by *D.L. v. District of Columbia*, 924 F.3d 585, 591-95 (D.C. Cir. 2019).

## COUNT II
## VIOLATIONS OF THE DCMWRA

23.     Plaintiff re-alleges and incorporates the allegations contained in the paragraphs above.

24.     At all times relevant to the case, Plaintiff was employed in the District of Columbia within the meaning of D.C. Code §32-1003 (b) because Plaintiff regularly spent more than 50% of his working time in the District of Columbia.

25.     At all times relevant to the Complaint, Plaintiff was by BMI within the meaning of D.C. Code § 32-1002 (2).

26.     At all times relevant to the Complaint, BMI was an "employer" of Plaintiff within the meaning of D.C. Code § 32-1002(3).

27.     BMI violated the DCMWRA by failing to pay Plaintiff anything at all for some hours of work and failing to pay him an agreed-upon or statutory overtime premium for some of his overtime hours. As a joint employer and as a client of a temporary staffing firm (Young) within the meaning of § 32-1012(f)(1).

28.     As a result of the violations of the DCMWRA, BMI, is liable for Plaintiff's unpaid wages, liquidated damages equal to three times the unpaid wages and reasonable attorneys' fees and costs incurred in this action, including attorneys' fees at the Legal Services Index Rate and/or the rates set forth in *Salazar ex rel. v. District of Columbia*, 809 F.3d 58 (D.C. Cir. 2015), as required by D.C. Code § 32-1308 (b)(1).

## COUNT III
## VIOLATIONS OF THE DCPCWL

29.     Plaintiff re-alleges and incorporates herein the allegations contained in the paragraphs above.

30.     At all times relevant to the Complaint, Plaintiff was an employee of Defendant within the meaning of D.C. Code § 32-1301 (2).

31.     At all times relevant to the Complaint, Defendant was an employer of Plaintiff within the meaning of D.C. Code § 32-1301 (1B). Defendant employed Plaintiff in the District of Columbia within the meaning of 32-1301(1B) because at all relevant times, Defendant employed Plaintiff in the District of Columbia. *See Steinke v. P5 Sols, Inc.*, Nos. 20-CV-287 & 20-CV-288, 2022 D.C. App. LEXIS 308 at *8-12, 2022 WL 4378675 (September 22, 2022); *Lincoln-Odumu*

*v. Med. Fac. Assocs.*, No. 15-1306 (BAH), 2016 U.S. Dist. LEXIS 88659, at *25 (D.D.C. 2016) (observing that the WPCL legislative history "evince[s] the Council's desire to ensure the broad [geographical] application" of the WPCL).

32.    BMI violated the DCPCWL by failing to pay Plaintiff a statutory or agreed-upon overtime premium for certain hours of work and failing to pay him anything at all for some of his hours of work.

33.    The DCPCWL independently creates a private right of action to recover an unpaid overtime premium in the following ways: (a) the term "Wages" in the DCPCWL expressly includes and "[o]vertime premium", D.C. Code § 32-1301(1B); (b) the DCPCWL expressly creates a private right of action to recover attorney's fees, liquidated damages and back wages for violations of federal law (*i.e.* the FLSA) and under the District of Columbia law (the DCMWRA). D.C. Code §§ 32-1301(3), 32-1303(1), 32-1303(4) and 32-1308(a)(1)(A).

34.    Defendant's failure to pay Plaintiff an agreed-upon or a statutory overtime premium violated the DCPCWL in the following ways: (a) Defendant violated the FLSA and said violations are actionable under the DCPCWL; and (b) Defendant violated the DCMWRA by failing to pay Plaintiff an overtime premium for his overtime hours; and (c) Defendant expressly violated the DCPCWL by failing to pay Plaintiff an agreed upon or a statutory overtime premium, because the DCPCWL expressly creates a private right of action for recovery of an overtime premium, back wages, liquidated damages and attorney's fees and costs, which is separate from the DCMWRA.

35.    As a result of the violations of the DCPCWL by Defendant, it is liable for Plaintiff's unpaid wages from February 26, 2015 until the violations end, liquidated damages equal to three times the unpaid wages and reasonable attorneys' fees and costs incurred in this action, including attorneys' fees at the Adjusted Laffey Matrix rate, the Legal Services Index Rate and/or the rates

set forth in *Salazar ex rel. v. District of Columbia*, 809 F.3d 58 (D.C. Cir. 2015), as required by D.C. Code § 32-1308 (b)(1).

36.     The precise amount owed to the Plaintiff by Defendant cannot be calculated at this time because Plaintiff does not possess all of his time records, which are in possession of Defendant.

**RELIEF REQUESTED**

Plaintiff requests the following relief:

A.     enter a judgment against BMI and in favor of Plaintiff, based on violations of the FLSA, in the amount of Plaintiff's unpaid wages, plus an amount equal to the amount of unpaid wages as liquidated damages;

B.     enter a judgment against BMI and in favor of Plaintiff, based on violations of the DCMWRA, in the amount of Plaintiff's unpaid wages, plus an amount equal to three times the amount of unpaid wages as liquidated damages;

C.     enter a judgment against BMI and in favor of Plaintiff, based on violations of the DCWPCL, in the amount of Plaintiff's unpaid wages, plus an amount equal to three times the amount of unpaid wages as liquidated damages;

D.     enter judgment against BMI and in favor of Plaintiff for his litigation costs and attorney's fees at the Adjusted Laffey Matrix rate, the Legal Services Index Rate and/or the rates set forth in *Salazar ex rel. v. District of Columbia*, 809 F.3d 58 (D.C. Cir. 2015), as required by D.C. Code § 32-1308 (b)(1).

Respectfully submitted,

/s/Omar Vincent Melehy_____
Omar Vincent Melehy, Esq.
DC Bar No.: 415849
MELEHY & ASSOCIATES LLC
8403 Colesville Road Suite 610
Silver Spring, Maryland 20910
ovmelehy@melehylaw.com
Phone:  (301) 587-6364
Fax:     (301) 587-6308
*Attorneys for Plaintiff*